UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AQUARIUS WELL DRILLING INC., et al., | NO. 2:12-cv-00971-MCE-CMK |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| AMERICAN STATES INSURANCE CO., GENERAL INSURANCE CO. OF AMERICA, | |
| Defendants. | |

----oo0oo----

Before the Court is Defendants American States Insurance Company ("ASIC") and General Insurance Company of America's ("General") Motion to Dismiss Plaintiffs Aquarius Well Drilling and Ray and Sharon Williamson's Complaint (ECF No. 6) ("MTD").[1]
///

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. R. 230(g).

1

For the reasons that follow, Defendants' Motion to Dismiss is GRANTED with leave to amend.

## BACKGROUND[2]

Aquarius is a California Corporation engaged in the well drilling and well testing business. (Complaint ("Compl."), ECF No. 1 ¶ 1). The Williamsons are husband and wife and are the sole officers, directors and shareholders of Aquarius. (Id.) The Defendants are both insurers.[3] (Id.)

Plaintiffs contend that, at all relevant times, they were insured by Defendants by means of a commercial general liability policy, No. 01-CG-326500 ("the Policy").[4] (Id. ¶ 3.)

---

[2] Except as otherwise noted, the following facts are taken from Plaintiffs' Complaint (ECF No. 1) ("Compl.") All page references to filed documents will be to the Court's ECF pagination. For the purposes of this Motion, the Court accepts Plaintiff's facts as true and makes all inferences in the light most favorable to Plaintiff.

[3] The Court notes, but does not reach because it is granting the Motion to Dismiss with leave to amend, two issues: (1) whether the Williamsons have standing to bring claims as individuals; and (2) whether General is a proper defendant to this action. As to the Williamsons' standing, the Court notes that they do not appear to be either named insureds under the Policy or named defendants in the underlying action by the Manleys. If Plaintiffs choose to amend their Complaint, the basis for the Williamsons' standing should be clarified. Similarly, General does not appear on the Policy, only ASIC, so the basis for Plaintiffs' claims against General is unclear. The Court does note that General is listed on the Notice of Nonrenewal (ECF No. 1, Ex. 3), however, whether that is sufficient to establish a basis to name General as a defendant is not clear at this time. So, in the event that Plaintiffs amend their Complaint, this issue should also be clarified.

[4] Attached to Plaintiffs' Complaint are (1) Defendants' January 16, 2012, declination letter (ECF No. 1, Ex. 2); (continued...)

1   In the policy, Defendants allegedly promised to pay those sums
2   Aquarius becomes legally obligated to pay, including damages and
3   attorneys' fees because of property damage or loss of use of
4   tangible property that is not injured caused by an "occurrence,"
5   defined as an "accident."  (Id. ¶ 7.)
6        On November 16, 2011, non-parties to this action, Laurie and
7   Robert Manley, filed a complaint against Aquarius.  (Id. ¶ 9.)
8   In this underlying lawsuit, Aquarius contends that the Manleys
9   charged Aquarius with negligence in testing a well on certain
10  real property, that thereafter the Manleys purchased the
11  property, and that in September 2009, the well suddenly and
12  unexpectedly ceased producing water while the Manleys depended on
13  it as a source of water.  (Id.)

---

[4](...continued)
Defendants' Notice of Non-Renewal (Ex. 3); (3) Plaintiffs' January 23, 2012 request for reconsideration (Ex. 4); and (5) Defendants' February 15, 2012 final declination letter (Ex. 5).  Although Plaintiffs do not include a copy of the Policy, Defendants request judicial notice of several documents, including the Policy.  Pursuant to Federal Rules of Evidence 201(b) (authorizing judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned"), Defendants request the Court take judicial notice of several documents. (Request for Judicial Notice ("RJN") (ECF No. 6, Ex. 1 and attached exhibits 1-4.)  Specifically, Defendants ask the Court to take judicial notice of: (1) the November 16, 2011, state court complaint against Aquarius brought by Laura and Robert Manley (Ex. 1); (2) the Complaint in this action (as well as the attachments listed above) (Ex. 2; see also ECF No. 1); (3) the Policy (Ex. 3 (the Policy is attached as an exhibit in three parts, (ECF Exs. 4-6); and (4) Excerpts from the Policy (Ex.4; ECF Ex. No. 7).  Defendants' requests are unopposed and are the proper subject of judicial notice.  See, e.g., Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1040 (E.D. Cal. 2009); Lee v. County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of matters of public record).  Accordingly, Defendants' Request for Judicial Notice, (ECF No. 23), is granted.

1    Aquarius alleges that it promptly notified Defendants of the
2 Manleys' lawsuit and tendered defense. (Id. ¶ 10.)  However, on
3 January 16, 2012, Defendants sent Aquarius a letter in which they
4 declined to defend, claiming that the policy did not cover the
5 matters alleged in the lawsuit. (Id. ¶ 11.)  On January 19,
6 Defendants then sent a Notice of Nonrenewal to Aquarius stating
7 the Policy would expire on March 26. (Id. ¶ 12.)  Then, on
8 January 23, Aquarius asked Defendants to reconsider their denial,
9 which, on February 15, Defendants also denied. (Id. ¶¶ 13.)
10   On April 12, 2012, Plaintiffs filed their Complaint in this
11 Court on the basis of diversity jurisdiction. (ECF No. 1).  In
12 their Complaint, Plaintiffs generally allege that Defendants were
13 obligated to defend the Manleys' lawsuit because the lawsuit
14 alleged that Aquarius had negligently tested the well, and that
15 the well thereafter unexpectedly ceased producing water,
16 interfering with the Manleys' use of the property. (Id. ¶ 9.)
17 In Plaintiffs' view, these claims sufficiently stated an
18 "occurrence" to trigger Defendants' duty to defend. (Id.
19 ¶¶ 9-10,19-24.)  Plaintiffs bring claims for (1) breach of
20 contract; (2) breach of the covenant of good faith and fair
21 dealing; (3) estoppel; and (4) intentional infliction of
22 emotional distress. (Id. at pages 4-9.)  They seek various
23 damages, as well as attorney fees and costs and a determination
24 that Defendants are estopped from denying coverage. (Id. at
25 pages 9-10.)
26 ///
27 ///
28 ///

4

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[5] (Motion to Dismiss ("MTD"), ECF No. 6.) Defendants' primary contention is that the Policy covered property damage only if caused by an "occurrence," which is defined as an "accident," and that "the Manleys' lawsuit merely alleged that Aquarius gave bad professional advice as to the well's water supply." (Id. at 7.) Defendants contend that, "[u]nder California law, an insured's bad professional advice or opinion does not amount to an accident or 'occurrence' triggering the insurer's duty to defend." (Id.)

## STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) (internal citations and quotations omitted).

///
///
///

---

[5] All further references to "Rule" or "Rules" shall be to the Federal Rules of Civil Procedure unless otherwise noted.

5

Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations and quotations omitted). A plaintiff's factual allegations must be enough to raise a right to relief above the speculative level. Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. at 555, n.3 (internal citations omitted).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009). If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680.
///
///
///
///

6

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Rule 15(a) empowers the court to freely grant leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment. . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend is generally denied when it is clear the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Balistieri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) ("A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations omitted).

**ANALYSIS**

**A.   Parties' Contentions**

Defendants contend the Policy requires that, to trigger their duty to defend, plaintiffs in an underlying lawsuit must allege property damage due to an "occurrence" or accident caused by their insured that results in property damage. (MTD at 7-18.) Defendants note the Policy states, in relevant part:

///
///
///

7

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.   Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . . .

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

   (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2)   The "bodily injury" or "property damage" occurs during the policy period;

(See MTD at 8-9; see also RJN, ECF No. 6, Ex. 4 (The Policy) at 4.)  In particular, the Policy defines "Occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same harmful conditions."  (The Policy at 18.)

Defendants assert that their duty to defend was not triggered because the Manleys' complaint in the underlying action alleges deliberate and purposeful conduct on Plaintiffs' part – the giving of bad professional advice – not an occurrence or accident.  (Id. at 9-10.)  Specifically, Defendants contend that the Manleys' complaint alleges that Aquarius falsely represented the productivity of the well, and fraudulently concealed the actual condition of the well from them.  (Id.)

///

///

///

According to Defendants, "California courts routinely hold 'that the insurer has no duty to defend where the underlying lawsuit is based on purposeful conduct and the policy confines coverage to injuries (e.g., property damage) caused by an accident.'" (Id. at 12, 12-15.)  Because they had no duty to defend, Defendants allege that all of Plaintiffs' claims fail. (Id. at 15-18.)

Plaintiffs argue that the underlying Manley complaint does, in the ninth cause of action, sufficiently raise negligence claims against them, based on inadequate well testing resulting in the Manleys' loss of use of the well, to constitute an "occurrence," triggering Defendants' duty to defend. (Opposition ("Opp'n"), ECF No. 8 at 9-10.)  In addition, Plaintiffs contend that the Manleys' eighth cause of action, for negligent misrepresentation, is also sufficient to raise the possibility for there to have been an "occurrence," therefore, again, the insurers had a duty to defend. (Id. at 12-14).

**B.   California Insurance: Duty to Defend Standard**[6]

An insurer is required to defend its insured if the underlying claim against the insured is potentially covered by the policy. George F. Hillenbrand, Inc. v. Ins. Co. of N. Am., 104 Cal. App. 4th 784, 800 (Cal Ct. App. 2002).  Though broad, the duty to defend is not unlimited; rather, "it is measured by the nature and kinds of risks covered by the policy."

---

[6] California law governs this insurance policy dispute brought in a diversity action. Hyundai Motor America v. National Union Fire Ins. Co., 600 F.3d 1092, 1097 (9th Cir. 2010).

Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 19 (Cal. 1995). Where there is no possibility of coverage, there is no duty to defend. Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 300 (Cal. 1993).

"Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy." Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (Cal. 2005). "To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." Montrose Chem, 6 Cal. 4th at 300. Thus, the insurer's duty to defend turns on the facts alleged in the underlying complaint or otherwise known at the time of tender, rather than "the technical legal cause[s] of action" pled in the suit. Swain v. Cal. Cas. Ins. Co., 99 Cal. App. 4th 1, 8 (Cal Ct. App. 2002). When an insurer denies defense without appropriate investigation, it takes the risk that "the insured may later be able to prove that a reasonable investigation would have uncovered evidence to establish . . . a potential for coverage. In that case, the insurer will be liable for the costs of defense already incurred by the insured and could also be exposed to tort liability." Eigner v. Worthington, 57 Cal. App. 4th 188, 195 (Cal. Ct. App. 1997) (quoting Am. Int'l Bank v. Fid. & Deposit Co., 49 Cal.App.4th 1558, 1571 (Cal Ct. App. 1996)).

///

**C.  Analysis**

California courts have held that for there to be an accident or "occurrence," the cause, as well as the result, must be unexpected, unusual, and unforeseen. <u>Merced Mut. Ins. Co. v. Mendez</u>, 213 Cal. App. 3d 41 (Cal Ct. App. 1989). "Accident" is given a commonsense interpretation that it is an unintentional, unexpected, chance occurrence. <u>Fire Ins. Exch. v. Sup. Ct.</u>, 181 Cal. App. 4th 388, 393 (Cal. Ct. App. 2010).

Intentional acts causing unintentional damage are not accidents for the purposes of insurance coverage. <u>See</u>, <u>e.g.</u>, <u>Ray v. Valley Forge Ins. Co.</u>, 77 Cal. App. 4th 1039, 1045–46 (Cal Ct. App. 1999). "An accident is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." <u>Merced Mut.</u>, 213 Cal. App. 3d at 43. Stated conversely, where damage is the direct and immediate result of an intended or expected event, there is no accident. <u>See</u>, <u>e.g.</u>, <u>Ray</u>, 77 Cal. App. 4th at 1045–46; <u>Merced Mut.</u>, 213 Cal. App. 3d at 48 (noting that the argument that the requisite intent applies not to one's actions, but to their consequences, "has been repeatedly rejected by the appellate courts"); <u>Swain</u>, 99 Cal. App. 4th at 10(the insured landlord's act of evicting tenants was not an "occurrence" triggering the insurer's duty to defend landlord in tenant's underlying wrongful eviction suit)

///
///
///

Here, the Manleys' complaint alleges that the seller of the real property at issue misrepresented to the Manleys that there was a working water well that had, three years earlier, produced twelve gallons per minute ("gpm"). (Manley Compl., ECF 6, Ex. 3 at ¶ 13.) The Manleys contend this was untrue: there was no well, just an eighteen foot deep hole dug with an excavator, which tapped into seeping ground water. (Id. at ¶ 14.) Regarding Aquarius, the Manleys allege that:

> Aquarius purportedly conducted several tests on the "well," including a "pump test" and "water analysis," among other things, but did not conduct a test regarding the depth or casing of the well, among other things. Furthermore, [] Aquarius reported on a written report that it conducted a 2 hour "well" pump test and it produced "12+ gpm." This representation was untrue as the "well" pump test was actually conducted over a few minutes with the results extrapolated out to a 2 hour time period.

(Id. at ¶ 15.)[7] Based on the representations of the seller and Aquarius, the Manleys bought the property in June 2007, but, in September 2009, the water source ceased, leaving them without a reliable water source and causing them to incur various costs to install a water source. (Id. at ¶ 16.)

The Manleys thereafter sued both the seller and Aquarius. In their complaint, the Manleys brought four causes of action against Aquarius, seeking relief either because of fraud (their sixth and seventh causes of action), or because of negligence (their eighth and ninth causes of action). (Id. at ¶¶ 53-78.)

///

---

[7] The Manleys' complaint does not specifically state who hired Aquarius to perform the challenged well tests, but they allege that Aquarius breached a duty owed to them, so presumably they hired Aquarius

12

The fraud claims generally allege that Aquarius knew, or should have known, its representations regarding the well were false and that Aquarius concealed the true nature of the well from the Manleys. (Id. at ¶¶ 53-60.)

The Manleys' Eighth Cause of Action, for negligent misrepresentation, alleges that while Aquarius's representations regarding the well were false, Aquarius may have honestly believed they were true and it intended for the Manleys to rely on its representations. (Id. at ¶¶ 60-73.) The Ninth Cause of action, a negligence claim, alleges that Aquarius had a duty to perform a thorough test of the well, but failed to do so and failed to disclose the actual condition of the well to the Manleys. (Id. at ¶¶ 74-78.)

Even drawing all possible inferences in favor of Aquarius, none of the Manleys' causes of action appear to allege an accident or occurrence under the Policy. The fraud claims allege Aquarius took deliberate actions to defraud and conceal the true nature of the property from the Manleys. Those acts do not constitute an accident or occurrence because they are deliberate and the Manleys' reliance was foreseeable. Merced Mut., 213 Cal. App. 3d at 43 ("An accident is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.")

///
///
///
///

13

1    Similarly, the negligence claims allege that Aquarius's act
2 of testing the well and reporting that it was producing twelve
3 gallons per minute were deliberate and wilful acts, but, for the
4 purposes of those claims, the Manleys assume Aquarius made honest
5 mistakes.  However, even if Plaintiffs' alleged errors were the
6 result of simple negligence, the acts of testing and reporting
7 the results of those tests were still deliberate and wilful acts
8 and the Manleys' reliance was foreseeable: there was no
9 "accident" or otherwise unexpected, unusual, and unforeseen
10 result that accrued as the result of Aquarius's tests and report.
11    In Ray, the California Court of Appeal held there was no
12 occurrence under a commercial general liability policy, therefore
13 no duty for an insurer to defend, where the insured provided
14 professional advice to the plaintiff in the underlying lawsuit
15 that turned out to be bad advice.  Ray, 77 Cal. App. 4th at
16 1045-46.  Aquarius states that facts here are different from
17 those in Ray because, in Ray, Ray intended to give the advice;
18 gave it in the intended manner, and the advice was followed as he
19 intended.  (Opp'n, ECF No. 8 at 11.)  Aquarius contends the
20 situation is different in the instant case because Aquarius did
21 not intend to be negligent.  (Id.)
22    This, however, is an unpersuasive argument.  In Ray, the
23 allegation was that Ray provided bad advice about suitable
24 roofing materials to the underlying plaintiff.  Ray,
25 77 Cal. App. 4th at 1043.  It was not alleged that Ray intended
26 to give bad advice, just that he did so.
27 ///
28 ///

14

1  The same holds true here: Aquarius was hired to provide a report
2  on the suitability of the well and intended the Manleys to rely
3  on that information, which they did.  In the negligence causes of
4  action it is not alleged that Aquarius intended to be negligent
5  in their testing and reporting, just that they were negligent.
6       Here, the Manleys allege that Aquarius was acting in its
7  professional capacity by performing a well test and preparing a
8  report that indicated the well produced twelve gallons of water
9  per minute.  As alleged, Aquarius intended that the Manleys rely
10 on this information, even if it turned out later (as it
11 apparently did) that the professional advice that Aquarius
12 provided was in error.  Because Aquarius's acts were deliberate,
13 there was no accident, and therefore no duty to defend.
14      Because the Court finds Aquarius's complaint does not state
15 any potential accident or occurrence within the meaning of the
16 Policy, there was no duty to defend and therefore Aquarius's
17 derivative claims for estoppel, breach of the implied covenant of
18 good faith and fair dealing, as well as the emotional distress
19 claims, all fail.
20      For the reasons set forth above, the Court does not find a
21 basis in the Policy for Plaintiffs' action.  However, the Court
22 will grant Defendants' Motion to Dismiss with leave to amend.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

As a matter of law, and for the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 6) is GRANTED with leave to amend. Plaintiffs shall file any amended complaint within twenty (20) days of electronic filing of this Order.

IT IS SO ORDERED.

Dated: July 13, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE