UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AQUARIUS WELL DRILLING, INC., RAY WILLIAMSON, and SHARON WILLIAMSON, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN STATES INSURANCE CO., <br><br> Defendant. | No. 2:12-cv-00971-MCE-CMK <br><br> **MEMORANDUM AND ORDER** |

Plaintiffs Aquarius Well Drilling, Inc. ("Aquarius") and Ray Williamson and Sharon Williamson ("Williamsons") seek redress from Defendant American States Insurance Company ("Defendant") based on multiple claims brought under California state law. Jurisdiction is premised on diversity. Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("MTD") for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 15.)

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

Defendant also filed a Request for Judicial Notice ("RJN") of certain documents. (ECF No. 15-1.)[2] Defendant's Motion was filed on August 13, 2012. Plaintiffs filed a timely opposition on September 5, 2012. (ECF No. 16.) Defendant filed a reply to Plaintiffs' opposition on September 12, 2012. (ECF No. 17.) For the reasons stated below, Defendant's Motion to Dismiss is GRANTED without leave to amend.[3]

## BACKGROUND[4]

Aquarius is a California corporation engaged in the well drilling and well testing business. The Williamsons are the sole executive officers, directors and shareholders of Aquarius. Defendant is an insurer.

The Williamsons carried and paid premiums for insurance protecting Aquarius, and with the exception of a property loss claim that did not exceed the deductible, and a claim for employee theft, which was denied, the Williamsons have not requested coverage for claims until the present matter. Plaintiffs were insured by Defendant's Ultra Speciality Services Policy, a commercial general liability policy, No. 01-CG-326500 ("Policy"). The Policy names Aquarius Well Drilling, Inc. as the named insured.[5]

---

[2] Defendant requests judicial notice of the November 16, 2011, state court complaint against Aquarius brought by Laura and Robert Manley. (ECF No. 15-1.) Defendant's request is unopposed and the subject document is attached to Plaintiffs' First Amended Complaint as an exhibit. (ECF No. 14-7.) Under Federal Rule of Evidence 201 ("Fed. R. Evid."), a court may take judicial notice of matters which are "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); Lee v. City of Los Angeles, 250 F3d 668, 688 (9th Cir. 2001). A court may take judicial notice of matters of public record. Lee, 250 F.3d at 688. Accordingly, Defendant's Request for Judicial Notice is GRANTED.

[3] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local Rule 230(g).

[4] The factual assertions in this section are taken from Plaintiffs' First Amended Complaint ("Compl.") (ECF No. 14.) For the purposes of this Motion, the Court accepts Plaintiffs' facts as true and makes all inferences in the light most favorable to Plaintiffs.

[5] In the FAC, the Williamsons attempt to clarify their standing by pointing to Section II.1.d. of the Policy which provides that if designated as "[a]n organization other than a partnership, joint venture or limited liability company, you are an insured. Your 'executive officers' and directors are insureds, <u>but only with respect to their duties as your officers or directors.</u> Your stockholders are also insureds, but only with

In the Policy, Defendant promised to pay sums Aquarius became legally obligated to pay, including damages and attorneys' fees due to property damage or loss of use of tangible property that is not physically injured, caused by an "occurrence," which is defined as an "accident." Prior to issuing the Policy, and thereafter, Defendant represented to Plaintiffs that the Policy would cover all claims against them arising out of their well drilling and well testing business.

In late May 2007, Mount Shasta Title ordered a well test from Aquarius on property in escrow located at 4105 Anderson Grade Road. Aquarius tested the well on May 31, 2007. Aquarius reported the findings and results of the test to Mount Shasta Title on June 5, 2007, but did not express opinions on the condition of the well on the subject property. At some point after the well was tested by Aquarius, non-parties to this action, Laurie and Robert Manley (" the Manleys") purchased the property.

On November 16, 2011, the Manleys filed an amended complaint in state court against Aquarius. In the complaint, the Manleys alleged Aquarius was negligent in testing the well on the property, resulting in inaccurate information which was reported to the title company. The Manleys alleged that they relied on Aquarius' report to the title company regarding the well on the property and purchased the property without testing the well further. In the ninth cause of action, the Manleys alleged that Aquarius was negligent when it failed to "conduct a thorough test and to disclose all material facts regarding the 'well,' including the fact it was not a water well and that it did not produce 12+ gallons of water per minute." (ECF No. 14-7 at 9 ¶ 75.) The Manleys alleged that when the well stopped working in September 2009, it constituted interference with their use of the property.

After the Manleys' suit was filed in November 2011, Aquarius promptly notified Defendant of the lawsuit and tendered defense of the lawsuit.

---

respect to their liability as stockholders." (ECF No. 14-12 at 1-2.) (emphasis added). The fact remains that the Williamsons were not named defendants in the underlying action by the Manleys and were not sued in their capacities as officers or directors of Aquarius. Thus, whether the Williamsons have standing is still unclear.

1  In December 2011, Defendant advised Aquarius that it would have to conduct a
2  coverage investigation before responding to the tender of defense.  Consequently,
3  Aquarius retained Martin Andreas as counsel to protect its rights and on December 21,
4  2011, Mr. Andreas filed an answer to the Manleys' complaint.

5  In a letter dated January 16, 2012, Defendant rejected Plaintiffs' tender and
6  declined to defend them against the Manley action, claiming that the Policy did not cover
7  the matters alleged in the lawsuit.  On January 19, 2012, Defendant sent Aquarius a
8  Notice of Nonrenewal that the Policy was going to be terminated "due to loss activity" on
9  March 26, 2012.  In response, on January 23, 2012, Aquarius asked Defendant to
10 reconsider its denial, which was consequently denied on February 15, 2012.

11 Plaintiffs allege that a November 22, 2011 "Loss Notice Report" to Defendant
12 described Aquarius' loss as "being sued for negligence (sic) and fraud," which was
13 included in Defendant's Analysis Worksheets prepared on April 25, 2012, when it closed
14 its claim file after Plaintiffs filed a complaint in this Court.

15 Plaintiffs further allege that in late 2009, a longtime employee of Aquarius
16 systematically embezzled Aquarius' funds and failed to pay insurance premiums or
17 payroll taxes.  The Williamsons confronted the employee in May 2011, who
18 subsequently pleaded guilty to several felonies and is serving time.  Plaintiffs reported
19 the embezzlement to Defendant's agent and were advised that the Policy did not cover
20 the loss.  As a result of the embezzlement, Aquarius claimed it lacked resources to
21 defend itself against the allegations made in the Manleys' complaint.  On June 5, 2012,
22 Aquarius reached a settlement agreement with the Manleys, under which it agreed to
23 pay the Manleys $15,000.00 to dismiss the complaint, of which $7,500.00 was to be paid
24 from the recovery of attorney's fees and costs from this present case.

25 As stated above, on April 12, 2012, Plaintiffs filed a complaint in this Court on the
26 basis of diversity jurisdiction.  (ECF No. 1.)  Defendant filed a Motion to Dismiss on
27 May 11, 2012 (ECF No. 6.)  The Court granted Defendant's Motion to Dismiss with leave
28 to amend on July 16, 2012.  (ECF No. 13.)

4

1  Plaintiffs filed a First Amended Complaint ("FAC") on the same bases as the original
2  complaint on August 2, 2012.  (ECF No. 14.)  Plaintiffs generally allege that Defendant
3  was obligated to defend Aquarius in the Manley lawsuit under the Policy because the
4  Manleys' negligence claim against Aquarius sufficiently stated an "occurrence,"
5  triggering Defendant's duty to defend.  More specifically, Plaintiffs raise the following
6  state law claims: (1) breach of contract; (2) breach of covenant of good faith; (3)
7  estoppel; and (4) intentional and negligent infliction of emotional distress.  Plaintiffs seek
8  various damages, as well as attorney fees and costs, and a determination that
9  Defendant is estopped from denying coverage.

## STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).  Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level."

///
///

1   Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal
2   Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (stating that the pleading must
3   contain something more than "a statement of facts that merely creates a suspicion [of] a
4   legally cognizable right of action")).
5        Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion,
6   of entitlement to relief. Without some factual allegation in the complaint, it is hard to see
7   how a claimant could satisfy the requirements of providing not only 'fair notice' of the
8   nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. at
9   555 n.3 (internal citations and quotations omitted). A pleading must contain "only
10  enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also
11  Iqbal, 556 U.S. at 677-79. If the "plaintiffs . . . have not nudged their claims across the
12  line from conceivable to plausible, their complaint must be dismissed." Twombly,
13  550 U.S. at 570; Iqbal, 556 U.S. at 680.
14       A court granting a motion to dismiss a complaint must then decide whether to
15  grant leave to amend. Rule 15(a) empowers the court to freely grant leave to amend
16  when there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . .
17  undue prejudice to the opposing party by virtue of allowance of the amendment, [or]
18  futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). Dismissal
19  without leave to amend is proper only if it is clear that "the complaint could not be saved
20  by any amendment." Intri-Plex Techs. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir.
21  2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props.,
22  Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted
23  where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).
24  ///
25  ///
26  ///
27  ///
28  ///

**ANALYSIS**

**A.    Breach of Contract**

For their first cause of action, Plaintiffs claim that Defendant breached its express obligations under the Policy by refusing to defend Aquarius against the Manleys' complaint. (ECF No. 14 at 7.) Plaintiffs argue that the negligence claim in the Manleys' complaint against Aquarius based on inadequate well testing which resulted in the loss of use of the well constituted an "occurrence," triggering Defendant's duty to defend because Aquarius did not intend for the unintended consequences of the well testing. (ECF No. 16 at 13.)

In response, Defendant asserts that the liability coverage under the Policy issued to Aquarius only applied to property damage resulting from an "occurrence," which means an "accident". Defendant reasons that because Aquarius' well testing was intentional, it does not qualify as an "accident." (ECF No. 15 at 12-13.) Defendant further argues that even if Aquarius' well report contained inaccurate information, this still does not constitute an "accident," triggering Defendant's duty to defend. (Id. at 15.) Defendant maintains that all of Plaintiffs' claims fail because Defendant did not have a duty to defend as a matter of law. (Id. at 16.)

Under California law, an insurer "must defend a suit which potentially seeks damages within the coverage of the policy." Fire Ins. Exch. v. Super. Ct., 181 Cal. App. 4th 388, 391 (2010) (quoting Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966)). An insurer does not have a duty to defend if "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." Gray, 65 Cal. 2d at 275 n.15. To prevail, "the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." Lyons v. Fire Ins. Exch., 161 Cal. App. 4th 880, 885 (2008) (quoting Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 300 (1993)) (emphasis in original).

Further, "any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. Even a single claim that does not predominate, but for which there is potential coverage, will trigger the insurer's duty to defend." Fire Ins. Exch., 181 Cal. App. 4th at 392 (citing Montrose, 6 Cal. 4th at 299-300). When a policy is ambiguous, an insurer has a duty to defend if "the insured would reasonably expect the insurer to defend him or her against the suit based on the nature and kind of risk covered by the policy." Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co., 18 Cal. 4th 857, 869 (1998). However, when there is no ambiguity or uncertainty as to the policy, the insured cannot reasonably expect a defense. Lyons, 161 Cal. App. 4th at 885 (citing Ulrich v. State Farm Fire & Cas. Co., 109 Cal. App. 4th 598, 622 (2003)).

In determining whether there is a duty to defend, the Court must compare the allegations of the complaint and the terms of the policy. Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (2005) (citing Montrose, 6 Cal. 4th at 295). The interpretation of an insurance policy is a question of law. Standard Fire Ins. Co. v. Spectrum Cmty. Ass'n, 141 Cal. App. 4th 1117, 1124 (2006).

In the present case, the terms of Defendant's policy provide:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement.**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

    **b.**    This insurance applies to "bodily injury" and "property damage" *only if:*
        **(1)**    The "bodily injury" or *"property damage" is caused by an "occurrence"* that takes place in the "coverage territory";

(Id. at 8-9; see also ECF No. 14-11 at 3) (emphasis added). Section V.13 of the Policy defines "occurrence" as "an accident." (ECF No. 14-12 at 7.)

1   California courts interpret "accident" to mean "an unintentional, unexpected, chance occurrence." Fire Ins. Exch., 181 Cal. App. 4th at 392 (citing St. Paul Fire & Marine Ins. Co. v. Super. Ct., 161 Cal. App. 3d 1199, 1202 (1984)).  It is also well established that "accident" "refers to the nature of the act giving rise to liability; not the insured's intent to cause harm."  Id. at 393 (citing Collin v. Am. Empire Ins. Co., 21 Cal. App. 4th 787, 810 (1994)).  Thus, where an insured *intended* all of the acts resulting in harm, even if the insured did not intend to cause injury, the event does not constitute an "accident" for insurance coverage purposes.  Ray v. Valley Forge Ins. Co., 77 Cal. App. 4th 1039, 1046 (citing Merced Mut. Ins. Co. v. Mendez, 213 Cal. App. 3d 41, 50 (1989)) (emphasis added).  There is no accident "when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage."  Merced Mut. Ins. Co., 213 Cal. App. 3d at 50.

Here, Plaintiffs' argument in the FAC is essentially the same as it was in the original complaint.  Plaintiffs still maintain that because Aquarius did not intend the results of the well test to be inaccurate and, thus, did not intend for the loss of property use, the resulting harm to the Manleys constituted an "occurrence" requiring Defendant to defend Plaintiffs in the underlying lawsuit.  (ECF No. 16 at 14.)  This Court found Plaintiffs' argument to be unpersuasive in its previous order granting Defendant's motion to dismiss.  (ECF No. 13 at 14) ("Even if Plaintiffs' alleged errors were the result of simple negligence, the acts of testing and reporting the results of those tests were still deliberate and willful acts and the Manleys' reliance was foreseeable: there was no 'accident' or otherwise unexpected, unusual, and unforeseen result that accrued as the result of Aquarius's tests and report.")

///
///
///
///
///

9

The only changes in the FAC include: the allegation that with the exception of a property loss claim and a claim for employee theft that was denied, Plaintiffs have not submitted a claim until the present matter; an attempt to clarify the Williamsons' standing; a recharacterization of one of the claims from the Manleys' complaint serving as the main basis for Plaintiffs' claims; and an allegation that Aquarius was embezzled by a former employee which left Aquarius without the ability to pay for an effective defense against the Manleys' complaint.  The FAC also includes attachments as exhibits  of the civil cover sheet; Defendant's January 16, 2012 declination letter; the notice of non-renewal; Plaintiffs' request for reconsideration; Defendant's February 15, 2012 declination letter; a copy of Aquarius' Well Report; the November 16, 2011, first amended state court complaint by the Manleys against Aquarius; Aquarius' answer; Defendant's Loss Notice Report dated November 23, 2011; a copy of the Settlement Agreement between the Manleys and Aquarius; and a copy of the Policy.

However, these additions still fail to allege any potential accident or occurrence such that Defendant would have a duty to defend under the Policy.  In the FAC, Plaintiffs contend that because the well report comprised of "objective test results," and because they did not "report or express opinions on the condition of the well," the Manleys' loss of use property damages were unintended consequences constituting an "accident." (ECF No. 16 at 8.)  Plaintiffs therefore claim that this triggered a duty to defend on Defendant's part as to the resulting negligence claim.  (Id.)  In making this distinction, Plaintiffs attempt to distinguish their facts from Ray v. Valley Forge Ins. Co., 77 Cal. App. 4th 1039 (1999).  While Plaintiffs attempted to do this in their original complaint, this Court rejected this distinction, finding that because "Aquarius's acts were deliberate, there was no accident." (ECF No. 13 at 14-15.)

Plaintiffs now endeavour to distinguish Ray on the ground that in that case, Ray gave subjective advice regarding re-roofing materials, which caused harm to the plaintiff.  77 Cal. App. 4th at 1043.

///

In the present case, on the other hand, Plaintiffs allege that they gave an "objective physical test of tangible property – with an objective empirical test that results in objective information." (ECF No. 16 at 13.) Plaintiffs argue that unlike Ray (who "did nothing physical or objective" and "merely gave advice"), Plaintiffs provided objective data. (ECF No. 16 at 13.) Even though that data ultimately resulted in inaccurate information that caused loss-of-use damages when the well unexpectedly stopped producing, Plaintiffs contend this unintended consequence was nonetheless an occurrence within the meaning of the Policy because Aquarius did not <u>intend</u> for the test to give inaccurate information. (ECF No. 16 at 13.) (emphasis added).

       The Court finds this distinction to be meritless. California courts have stated "accident" refers to the nature of the insured's conduct, not his state of mind or to the consequences of the conduct. <u>Collin</u>, 21 Cal. App. 4th at 804; <u>Fire Ins. Exch.</u>, 181 Cal. App. 4th at 395. Thus, whether Aquarius' well testing was done negligently or not, regardless of the unintended consequences, "the insured's conduct alleged to have given rise to claimant's injuries is necessarily non-accidental, not because any 'harm' was intended, but simply because the conduct could not be engaged in by 'accident'." <u>Quan v. Truck Ins. Exch.</u>, 67 Cal. App. 4th 583, 596 (1998). Plaintiffs could not have engaged in the well testing by "accident." Further, in <u>Ray</u>, the court found that it was "immaterial that Ray disclaimed knowledge about insulation and did not proffer advice on it to Association." 77 Cal. App. 4th at 1048-49. Similarly, here, the Court finds that whether Plaintiffs were aware that the results of the well report were inaccurate or not is immaterial in determining whether Defendant had a duty to defend.

       Thus, as this Court previously found, Aquarius' act in testing the well was intentional, and whether Aquarius intended harm or not in preparing the report with false information is irrelevant to claim that the resulting harm was an "occurrence" within the Policy's coverage. Where there is no possibility of coverage, as is the case here, there is no duty to defend. <u>Miller v. Western Gen. Agency, Inc.</u>, 41 Cal. App. 4th 1144, 1152 (1996).

Accordingly, there was no duty to defend and therefore, Aquarius' derivative claims for breach of the implied covenant of good faith and fair dealing, estoppel, as well as the emotional distress claims, all fail as a matter of law.

## CONCLUSION

As a matter of law, and for the reasons set forth above, Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint is GRANTED. Because the Court believes that the deficiencies of Plaintiffs' complaint cannot be cured through further amendment, no leave to amend will be accorded. The Clerk of this Court is accordingly directed to close the file.

IT IS SO ORDERED.

Dated: December 4, 2012

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE